## Stemmons and Hyatts *vs* King.

### ERROR TO THE LINCOLN CIRCUIT.

*Practice in chancery. Attachments. Cross suits.*

JUDGE BRECK delivered the opinion of the Court.

CHANCERY.

*Case* 141.

*September 22.*

In November, 1841, William Hyatt executed a mortgage to King upon three slaves, Christina, Andy and Dave, to secure the payment of four hundred and ninety dollars. In January, 1842, King exhibited his bill for a foreclosure and also for an attachment and restraining order, which was awarded him, to prevent a removal and fraudulent disposition of the slaves.

The bill to foreclose mortgage.

Hyatt resisted the relief sought upon the ground that the demand in the mortgage was tainted with gaming and usury. The Court, however, decreed a sale of the

Hyatt's answer charging gaming and usury in the consideration.

STEMMONS AND HYATTS *vs* KING.

slaves to satisfy the mortgage debt. Hyatt brought the case to this Court, and the decree was reversed upon the ground that there was included in the debt some thirty odd dollars of usury, and that Agnes Hyatt, the mother of the mortgagor, had a dower interest in the slaves, and had not been made a party.

Complainant's amended bill.

Upon the return of the cause the complainant, by amended pleadings, made said Agnes, also J. G. Hyatt, M. A. Stemmons and Feland defendants, and they were all brought before the Court.

The widow answered and asserted a claim of dower in the slaves, as the widow of William Hyatt, Sr., by whom they had been devised, or from whom they had descended, and which, does not very clearly appear, to the said William Hyatt, the mortgagor.

J. G. Hyatt's answer and cross bill asserting prior liens on mortgaged property.

J. G. Hyatt set up a prior lien upon the slave, Andy, in virtue of a pledge for loaned money, and made his answer a cross bill. Stemmons claimed an interest in the slaves in virtue of a mortgage from the defendant, William, and his mother, transferring to him all their interest therein. This mortgage was made subsequent to the mortgage to the complainant.

Stemmons' answer and cross bill charging J. G. Hyatt's lien and asserting right as adm'r. of Wm. Hyatt, Sr. for advances beyond assets.

Stemmons also claimed by transfer from J. G. Hyatt, the benefit of his lien upon the slave, Andy. He also claimed a lien upon all the slaves as administrator, with the will annexed, of William Hyatt, Sr., for debts which he as his surety, had been compelled to pay, alledging that he had not relinquished his lien by surrendering the slaves to the said William as the devisee or heir. He also made his answer a cross bill.

All the defendants assail and resist the demand of King. While the slave, Andy, was in the possession of the commissioner appointed to make the sale under the first decree, J. G. Hyatt sued out a writ of replevin and had said slave delivered to him. So far as appears, that action has never been disposed of. Stemmons and Feland were the sureties in the bond in that case.

Second decree of the Circuit C't.

The Circuit Judge decreed a sale of the slaves to satisfy the complainant's demand, after deducting the usury.

The decree in reference to the interest in the slaves decreed to be sold, is somewhat ambiguous, but in view of all its provisions, we think it may and should be construed as directing a sale of Andy and Dave, the children of Christina, to be first made, and the sale of them to be absolute, or the entire interest to be sold. Should it be necessary for the payment of complainant's claim, to make sale of Christina, she was to be sold subject to the dower or life estate of the widow.

The Court also, so far as King was concerned, dismissed the cross bills of Stemmons and J. G. Hyatt, with costs.

To this decree and proceedings a writ of error is prosecuted against King by all the other parties, and they severally assign their errors.

Various questions are presented; and,

I. It is contended that the causes were prematurely heard; that all necessary parties were not before the Court on the cross bill of Stemmons, either when the decree *nisi* or the final decree was rendered. This objection, in our opinion, constitutes no sufficient ground for disturbing the decree. King filed his amended bill after the return of the cause from this Court, in September, 1844, and process was shortly afterwards served upon all the new defendants.

Stemmons did not answer till March, 1846. In September following he obtained leave to file an amendatory answer and cross bill, in which he, for the first time, sets up a lien upon the slaves as administrator, for debts which he had been compelled to pay as surety for his testator. He alledged debts had been paid three or four years before that time. He alledges that the matter did not occur to him when he filed his first answer and cross bill. But it seems he was permitted to file this amendment upon terms, it being agreed by the parties, that King might file his answer thereto, and that there should be a trial of the suit at that term, if urged by him. King filed his answer but the case was not heard till June, 1847, when a decree *nisi* was rendered in his favor. At the September term, 1847, on the 21st of that month the case of *King* vs *Hyatt, &c.* was sub-

STEMMONS AND HYATTS vs KING.

mitted, and afterwards, on the 23d, that suit, together with both the cross suits, were, by consent of parties, consolidated and heard together. Now the only objection to the hearing at that term is, that process upon the cross bill of Stemmons had not been served upon William Hyatt. Upon the first answer and cross bill of Stemmons, filed in March, 1846, no process issued till October following, which was returned as to William Hyatt, not found, and no process issued afterwards. The record shows, therefore, on the part of Stemmons, great negligence in the preparation of his case, and there is reason to presume that the delay was not without design. But whether so or not is not material.

The failure of parties defendants in a cross suit between each other, to prepare their cases for trial, presents no objection to a trial between them and complainants.

William Hyatt was before the Court as a defendant in the suit of King, and he and all the other parties consented to the consolidation and trial of all these causes. After such consent, the fact that Hyatt had not been served with process upon the cross bill of Stemmons, would not be an available objection as against King. All parties controverted his right to relief, and could defeat his recovery, if at all, as well without cross suits as with. Whether the cross suits were ready for trial or not, really constituted no obstacle to the trial of the suit of King. If William Hyatt had answered the cross bill of Stemmons, his answer would not have been evidence against King, and would not, whatever might have been its character, have strengthened Stemmons' equity as against King. For as between them, issues in regard to all the material matters relied on by the former, were made up by the answer of the latter. How far Stemmons' right to relief against the Hyatts, may have been affected by his failure to bring William Hyatt before the Court upon his cross bill, it may be necessary to notice hereafter. As against King, we think, it is not an available error.

II. It is contended the decree is erroneous upon the merits: 1. Upon the ground that King's debt is tainted with a gaming transaction, and that not enough was deducted for the usury. In regard to the first part of this objection, we need only remark that although there are some circumstances calculated to excite suspicion

that there was an understanding between King and Purdom, who received the money loaned by King to Hyatt, and whose claim upon Hyatt in whole or in part, originated in a gaming transaction, yet the testimony is deemed insufficient to establish such an understanding or connection, or even to fasten upon King the knowledge of the fact that the money was loaned to pay a gaming debt, in opposition to the positive denials in his answer.

As to the usury, there is even no pretence that there was a greater amount included in the debt than has been deducted.

2. It is insisted that the Court erred in not sustaining the pledge of the slave, Andy, by William to J. G. Hyatt. The testimony upon that subject is unsatisfactory and too much so to sustain the claim against the recorded mortgage of King. We do not discover from any thing in the record, that at the time the alledged pledge was made, William Hyatt was, as contended, embarrassed. In view of the estate that he then possessed, there is little probability that the pledge would have been exacted by a brother upon the loan of $250. Besides, when J. G. Hyatt attempted to dispose of the claim, or when talking about it, he said nothing about the pledge. He said nothing about it when Andy, with the other slaves, were attached by King. A decree was also obtained for their sale and no claim asserted by him. He did not allude to it in his affidavit and schedule to obtain the benefit of the bankrupt law.

Our conclusion in view of all the circumstances is, that there was no pledge till after the mortgage of King was upon record. But even if there was, that there was not such a change of possession as would render it valid against the claim of King.

3. It is contended that as William Hyatt admits the pledge to J. G. Hyatt, and as Stemmons has a junior mortgage upon the slaves from Wm. Hyatt and his mother, the Court, even if it gave King the preference, should have decreed the sale of as much of the property as would have paid all the debts, for which there was

STEMMONS AND
HYATTS
*vs*
KING.

a lien, directing which should be first paid, in case of a deficit of assets.

It is true W. Hyatt, in his answer to the amended bill of King, admits the pledge to J. G. Hyatt, and that he had a prior lien upon the slave, Andy, for about $177, besides interest. But upon the cross bill of J. G. Hyatt, he was not before the Court and filed no answer. Besides Stemmons claims the benefit of the alledged lien of J. G. Hyatt, and his right is not controverted by Hyatt, who is a party to Stemmons' cross bill.

Stemmons also sets up sundry demands against W. Hyatt and his mother, but he is not before the Court, as we have seen, upon Stemmons' cross bill, and makes no admission as to the justice of those demands. It moreover appears, that in the mortgage from Hyatt to Stemmons, there was included a tract of land, a fraction of which the latter alledges has been sold, and that there is a controversy still pending in regard to the residue.

It seems to us, therefore, that the Court below was right in directing a sale of only so many of the slaves as might be necessary to discharge the claim of King, and in retaining the cross bills, except as to King, that the proper parties might be brought before the Court, and for further preparation. There was no error in dismissing them as to King, as he would be neither a necessary nor proper party after his demand was satisfied.

The decree is also right, as we understand it, in directing Andy and Dave to be sold absolutely, and if necessary to sell Christina, that she should be sold subject to the life estate or dower of Mrs. Hyatt. She set up no claim to Andy and Dave, but claimed their mother during her life as her dower interest in the slaves of her husband. W. Hyatt and Stemmons seem both to have acquiesced in her thus holding Christina as her dower.

The decree is also right in directing that in the event of the sale of Christina, she be permitted to remain in possession of Mrs. Hyatt. She had her in possession when King's attachment was levied, and she was a security in the bond for the forthcoming of the slaves to abide the decree of the Chancellor. Nor does this provision affect the claim of Stemmons to the dower inter-

est of Mrs. Hyatt under her mortgage to him. The Court only decide, that as between her, Stemmons and William Hyatt, and King, she was entitled to the slave Christina in right of dower, leaving the question undecided in regard to the claim of Stemmons to that interest, and also to any excess in the sales, after satisfying the decree in favor of King.

We are also of opinion, that Stemmons failed to establish a lien upon the slaves, as administrator, for the alledged debts, which he had paid as surety for his testator. It very satisfactorily appears that he had settled up the estate, and delivered it over, not only long before he claimed a lien, but long before any of the alledged debts were paid by him. It was not necessary that there should be any formal surrender or delivery of the slaves to vest them absolutely in the devisee or heir. It was sufficient that he had them in possession for years, claiming them as his own—mortgaging them not only to King, but even to Stemmons himself, without an intimation that he had any lien upon them, or control over them as administrator. From such circumstances, a surrender of all claim may fairly be implied. In his original answer and cross bill, no such claim is asserted, and it was evidently an after thought in setting it up in his amended cross answer.

Finally, it is contended that the Chancellor had no right to injoin the proceedings at law under the writ of replevin, sued out by J. G. Hyatt. This objection, we think, is also untenable. The slave Andy when taken under the writ of replevin, was in the custody of the law, in the possession of the commissioner of a Court of equity under a decree. And the Chancellor cannot be ousted of his jurisdiction, and his decrees defeated by an action of replevin or any proceeding at law: *Hackley's executor* vs *Swigert*, (5 *B. Monroe*, 87;) *Kane*, &c. vs *Pilcher*, &c., (7 *B. Monroe*, 652.) In this case, his jurisdiction was manifest, and he alone, even if it were conceded that the pledge relied on was legal and valid, could render adequate and appropriate relief. The question involved was one of conflicting liens, which it was the peculiar province of a Court of equity to adju-

*After an attachment ordered by the Chancellor, and the property taken into custody, by no proceeding at law, can a third person interfere with the possession thereof.*

dicate and settle. The injunction and restraining order were properly awarded, and the controversy finally and correctly decided.

It results that there is no error in the decree to the prejudice of any of the plaintiffs in error, and it is therefore affirmed.

*Turner* for plaintiffs; *Fox* and *J. & W. L. Harlan* for defendant.